BOOGHER *v.* ROACH.

---

PLEADING; JOINDER OF PARTIES; CONTRACTS; STATUTE OF LIMITATIONS; QUANTUM MERUIT; APPELLATE PRACTICE.

1. The joinder of two or more defendants in a suit at common law, based upon contract, express or implied, can only be upheld upon the theory of joint liabilty.

2. A statement by one of two alleged joint promisors in an action for services, that the plaintiff ought to be paid for his services whenever they had money to pay with, and the use by such alleged promisor of material prepared by the plaintiff upon the promise of the other

promisor that he would pay for his work, afford insufficient evidence of an implied or an express promise on the part of the first promisor to pay for such services, unless the use is under circumstances from which a promise from himself can be implied.

3. A suit for services is barred after the expiration of three years from the time the right of action accrued, in the absence of an acknowledgment and new promise within the statutory period.

4. A suit upon a *quantum meruit*, or an implied contract, resulting from the acceptance or use of the plaintiff's work with the understanding that it should be paid for by the defendants at its proper value, is not supported by proof of an express contract to pay a contingent fee for such services.

5 An assignment of error based upon the exclusion by the trial court of the records "of other chancery suits" relating to the subject-matter, is too vague and indefinite to be considered.

6. In order to meet the objection that his claim was barred by the statute of limitations at the time his suit was brought, it cannot properly be urged by an appellant in this court, whose claim was for payment for services to be paid for upon the collection of certain money by the appellees, that if the record of a certain chancery suit offered by him in the court below had been admitted in evidence it would have shown that the appellees collected such money within the statutory period, where such record was offered at the trial court generally, and not for that specific purpose.

7. While an implied contract on a *quantum meruit* may be made to depend upon a contingency, as well as an express contract, yet, in the absence of such agreement or understanding, services rendered under an implied contract are entitled to compensation immediately upon their conclusion. (Distinguishing *Hughes* v. *Eschback*, 7 D. C. 66.)

No. 1494.   Submitted March 21, 1905.   Decided April 4, 1905.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon a verdict directed by the Court in an action to recover compensation for services.                                   *Affirmed.*

The COURT in the opinion stated the case as follows:

This is a suit at common law instituted in the supreme court of the District of Columbia by the appellant, William F. Boogher, as plaintiff to recover compensation for "special services" alleged to have been rendered by the plaintiff to the de-

fendants, as "genealogist, examiner, and conveyancer, rendered in looking up, investigating, identifying, and locating the real estate belonging to the estate of Abraham Young, briefing the titles thereof, and in tracing, locating, and establishing the heirs of said Abraham Young, ascertaining their names, residences, degree of relationship, their respective interests, rights, etc., in and to said estate, and in the procuring of the necessary information to prepare the same, and in the preparation of deeds and contracts between the said heirs and the said trustees or defendants, or those preceding them, of great value to and made use of by said defendants; said services being rendered from, to wit, November 1, 1888, to 1892,— $2,500"—as stated in the particulars of demand annexed to the plaintiff's declaration, which itself is in the common counts.

The same subject-matter of controversy was before us on a former occasion, in an equity suit instituted in the supreme court of the District by the appellant here, as complainant, against the appellees here and one other person, John L. Weaver, as defendant, to charge a certain trust fund for the payment of these same services. *Boogher* v. *Roach,* 12 App. D. C. 477. There the bill of complaint was dismissed by the court below, and this court affirmed the decree of dismissal. In the opinion then rendered by this court it was said: "Whilst the acceptance of these services might have entitled him [Boogher] to an action of assumpsit against Roach, and even against Denver and Walter, we entirely agree with the learned justice who presided at the hearing, that his claim therefor cannot be made a charge against the trust estate or fund."

Acting upon what he assumed to be the intimation contained in this clause of the opinion, the appellant forthwith instituted the present suit at common law against Roach and Walter, General Denver having been dead for some time before. Roach and Walter severed in their pleadings; but their pleas, however, are substantially the same. They are the general issue, the statute of limitations, and former adjudication (in the equity suit mentioned), upon which the parties went to trial. At the trial it seems that the plaintiff alone offered testimony. That testi-

mony, in the main, was substantially the same that was adduced in the equity suit, and which was set forth at some length in the opinion of this court in 12 App. D. C. 477. It need not therefore be here repeated. In addition to that, however, there was some additional testimony as to the value of the plaintiff's services, which certainly involved very great labor and research, and must have been exceedingly useful to those who availed themselves of them.

The bill of exceptions taken in the case thereupon showed the following proceedings:

"The plaintiff to further maintain the issue joined upon his part offered to introduce in evidence before the jury the record in the chancery cause No. 21,842 in the name of *Franklin H. Mackey et al.* v. *John H. Walter et al.,* to show that in the management of the estate the defendant Walter and those who are acting with him would receive 50 per cent of said estate, and so much of the record as showed that the said John H. Walter as surviving trustee of Gen. J. W. Denver and John H. Walter, trustees in the original deed of trust, realized upon a large part of the real estate belonging to the heirs of said estates, and had received various amounts, which the complainant offered to prove by the record in said chancery cause and in other chancery causes relating to the subject-matter, and to which proffer the defendants objected on the ground that said testimony was irrelevant and immaterial, and also upon the ground of the former adjudication pleaded in this case; and the court refused to admit this testimony to be introduced before the jury; and the plaintiff by his counsel excepted to this action of the court.

"Thereupon both the defendants moved the court to instruct the jury to find a verdict for the defendants upon the testimony introduced by the plaintiff, upon the ground that the statute of limitations applied thereto and constitutes a bar to the plaintiff's right of action, which motion the court sustained, and thereupon the plaintiff excepted to this action of the court, and the jury thereupon rendered their verdict in favor of the defendant."

A motion for a new trial was made and overruled, and judg-

ment was entered for the defendants; from which the plaintiff has appealed.

*Mr. John E. Roller* and *Mr. D. S. Mackall* for the appellant.

*Mr. Walter C. Clephane* and *Mr. Alan O. Clephane* for the appellee.

Mr. Justice Morris delivered the opinion of the Court:

There are four assignments of error. One of them based upon the refusal of the court to grant a new trial need not be considered. The other three are, in effect—

(1) That it was error to refuse to permit the plaintiff to introduce in evidence the record of the chancery suit of Mackey and others v. Walter and others, for the purpose of showing that Walter and those acting with him would receive 50 per cent of the entire estate.

(2) That it was error to exclude from the evidence the records of other chancery suits which would show that Walter had realized upon a large part of the real estate, and had received various amounts out of the same.

(3) That it was error to rule that the plaintiff's claim was barred by the statute of limitations.

We do not regard any of these assignments of error as well founded in law.

It is sought by the suit to enforce a joint liability; for the joinder of two or more defendants in a suit at common law, based upon contract, express or implied, can only be upheld upon the theory of joint liability. But there is no evidence whatever in the record before us of any joint liability on the part of the defendants. Between the appellant and the defendant Walter the record fails to disclose even the semblance of a contract. All that the record shows bearing upon Walter's liability is a part of the testimony of the plaintiff testifying as a witness on his own behalf, in which he says that in July or August of 1889, "at the request of Roach he turned all the

papers over to General Denver, who turned them over to Walter, upon the promise that he was to be paid for his work;" and again, that "he had never gotten any information from Walter, and indeed had never talked with him until after he had surrendered all the papers to General Denver, his cotrustee, and that he afterwards went to see Walter, and Walter said to witness that he ought to be paid when they had the money to pay with." This further statement from his testimony may also be cited: "Witness also said that Walter had produced the papers prepared by witness in the equity cause of *William F. Boogher v. J. L. Weaver, etc.,* and admitted that he got them from Roach; he also admitted that they had used them, and were still using them. The names in the recitals of the deed drawn by the attorneys for these trustees, Denver and Walter, are the same as shown by the work of witness."

How far the statement in this last cited portion of the plaintiff's testimony has any bearing on the present controversy we are not advised. We are not advised of the nature and purpose of the suit of *Boogher v. Weaver, etc.,* or what bearing that suit had on the present case. The natural inference from its title would be that it was a controversy merely between Boogher and Weaver as to their respective rights under the contract between them, and in no way involved the rights of any of the heirs of Abraham Young. If it did involve more than this it should have been set forth. This court cannot ascertain from this record the contents of that suit. Apparently the papers referred to are papers prepared by the plaintiff for his own suit against Weaver, and it is not apparent why he should have compensation for them from Walter or from anyone else. If we were permitted to indulge in conjecture, we might assume that this suit and the papers used therein, and to which reference is made, were part of the general scheme to recover property claimed by the heirs of Abraham Young, but we cannot determine cases upon conjecture.

The other statements cited are no sufficient evidence on the part of Walter to pay the plaintiff for anything. The witness states that Walter said to him that he (witness) "ought to be

paid when they had the money to pay with;" and we may well assume that this statement was true, and that the plaintiff should be paid. But it does not show that Walter promised to pay, or in any manner bound himself to pay, even if he used the material prepared by the plaintiff. There is no reason why he should not have used that material without liability on his part to anyone, after it had been delivered to him, or to General Denver, by Thomas W. Roach, unless the use was under circumstances from which a promise from himself could have been implied. But there are no such circumstances.

It is true that the plaintiff also testified that "at the request of Roach he turned over all the papers to General Denver, who turned them over to Walter, upon the promise that he (plaintiff) was to be paid for his work." This promise evidently was the promise of Roach, and not the promise either of Denver or of Walter. Indeed it is very evident from all the testimony that there was no promise whatever, so far as this record discloses, from either Denver or Walter, to pay the plaintiff for the material furnished by him. If the testimony implicates anyone in such a promise, it is only the appellee, Thomas W. Roach.

But if we assume that Roach made such a promise, of which, perhaps, no doubt need be entertained, and if we assume also that the circumstances of the case will imply a promise by Walter to pay, yet the plaintiff's cause of action on either or both promises has long since been barred by the statute of limitations. The services for which compensation is claimed are stated to have been rendered from November 1, 1888, to 1892, and the plaintiff states that he turned over his papers to General Denver in May of 1890. The promise of Roach for payment and the alleged implied promise of Walter were both made at or about the same time. This suit was not instituted until April of 1898, nearly eight years afterwards. Plainly therefore the statute of limitations had intervened to bar the plaintiff's claim, however well founded it may have been in its origin. There is nothing whatever in the record from which a promise can be implied to keep the claim alive, or to make its payment contingent upon the realization of funds from the estate of Abraham Young.

As we have seen, there was no promise whatever by Walter, but only an expression of opinion that the plaintiff ought to be paid whenever there was money wherewith to pay him, which cannot reasonably be construed as a promise; and the promise of Roach was unconditional that the plaintiff should be paid for his work, which of course became barred in three years thereafter.

It is true that in the record there appears a contract in writing between Thomas W. Roach and others, and John L. Weaver, in which the latter was to do the work for which, or for part of which, the appellant was afterwards employed, and was to receive a compensation of 10 per cent of the value of the property to be recovered, which was "to be paid in cash, or as may be otherwise agreed upon, upon the amounts as fast as obtained and disposed of at the value of the property when disposed of," and that afterwards, for an alleged consideration of $1,000, Boogher and Weaver contracted with each other that Boogher should do some of the work which Weaver had undertaken, and that he should receive therefor one half of Weaver's fee. And this contract was ratified by Thomas W. Roach as trustee for himself and the other heirs. But this contract, even if it were not infected with the vice of champerty, as we intimated in the opinion in the case of *Boogher* v. *Roach,* 12 App. D. C. 477, is not the contract upon which the plaintiff sues. That contract was abandoned by Weaver in 1889, and renounced by the plaintiff himself soon afterwards. The suit is upon a *quantum meruit,* or an implied contract, resulting from the acceptance and use of the plaintiff's work, with the understanding that it should be paid for by the defendants at its proper value, not at the percentage stipulated in the Weaver contract.

It is very clear, therefore, that the plaintiff has no good and sufficient ground of action against Walter, and that his claim against Roach is barred by the statute of limitations.

It is argued, however, on behalf of the appellant that while the ruling of the trial court may have been right, as we here hold it was, upon the application of the statute of limitations as the record stood with the testimony excluded which he sought to

introduce, yet, as that testimony would show when the property had been disposed of, the value of such property, and when the sums realized therefrom by the trustee had been realized, its. exclusion was error. This assumption of what the excluded testimony would show is not supported by anything that appears. in the record. The evidence which was excluded was that of a. certain chancery suit between Franklin H. Mackey and John H. Walter and others, No. 21,842 in the supreme court of the District, and other chancery causes relating to the subject-matter. Of course, it is unnecessary to expend argument upon the proposition that there was error in the exclusion of "other chancery causes relating to the subject-matter." Such a statement as to proposed testimony is too vague and indefinite to be considered by an appellate court.

With reference to the record of the chancery cause which is more specifically mentioned, that of Mackey v. Walter, the offer was to show by it that Walter and those who were acting with him would receive 50 per cent of the estate, and that Walter had received various amounts from the estate. Assuming that this record was otherwise admissible, yet the offer was of testimony that was wholly irrelevant. The crucial difficulty in the plaintiff's case as to Roach is the statute of limitations; and there was no offer here to show anything that would take the case out of the operation of the statute. Under the plaintiff's. theory of the case, that his claim became payable only when there was money realized from the Young estate which should be applied to its payment, yet there was no offer to show when such money was realized. It is now argued that the record, if admitted, would have shown the time when such sums were realized. But this is mere assumption; nor would it have been. of any consequence when such sums were received, unless the time of receipt was within the period of limitations. The proffer at the trial should have been to show by the record that these sums had been received at a time which would have taken the case out of the operation of the statute.

But even this proffer would properly have been rejected, for it would have been as irrelevant as that which was actually

made. It would have been based on the Weaver-Roach contract ·or the Weaver-Boogher-Roach contract of 1889, which is not in ·this case, and not upon the implied contract upon which the plaintiff has brought his suit. There is not a scintilla of evidence in connection with the latter contract, that it was to be performed only upon the realization of funds by the Young ·estate. Such may have been the intention perhaps, for an implied contract upon a *quantum meruit* may be made to depend ·upon a contingency, as well as an express contract; but there is no proof here of any such agreement or understanding; and in ·the absence of such agreement or understanding, services ren- ·dered under an implied contract are entitled to compensation immediately upon their conclusion.

The case of *Hughes v. Eschback,* 7 D. C. 66, cited on behalf ·of the appellant, is not antagonistic to the views here stated. In that case it was held by the supreme court of the District of Columbia in general term that, under the common counts of a declaration, a contract in writing under seal could be given in evidence. But that is a very different thing from importing into a suit on the common counts one part of a discarded, abandoned, ·and champertous contract under which no compensation is claimed.

We are of opinion that there was no error in the rulings of the trial court, and that the judgment appealed from should be ·affirmed, with costs. And it is so ordered.        *Affirmed.*